# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

|  |  |  |
|---|---|---|
| | | **Case No. 17-20470** |
| | **Plaintiff,** | **Hon. Bernard A. Friedman** |
| **vs.** | | |

**ALI BAYDOUN,**

                           **Defendant,**

_____/

## DEFENDANT ALI BAYDOUN'S
## SENTENCING MEMORANDUM

### I.  INTRODUCTION

Sentencing is an inherently individual matter, and Mr. Baydoun's individual conduct is the point for the Court's sentencing focus.  Sentencing is meant to treat each offender as individual, *Pepper v. United States*, 562 U.S. 476 (2011); *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007).  Mr. Baydoun submits this sentencing memorandum, and  urges the Court to find that because of  his individual, limited involvement in this offense, a sentence of probation is sufficient to satisfy the purposes of *18 USC §3553(a)*.  Mr. Baydoun's conviction, and the attendant collateral consequences, in and of themselves itself, are sufficient punishment for his limited involvement in this case.

## I. FACTUAL AND PROCEDURAL HISTORY

The government's repeated reference to "the Baydouns'scheme", and similar statements, reflect an effort to undermine its stipulation that Mr. Ali Baydoun played a minimal role in this offense, and to make Mr. Ali Baydoun's participation in this crime appear to be more than it was.  This is a violation of its obligations under the Rule 11 plea agreement (Doc 28, p. 6).  The broad brush with which the government attempts to conflate the activities of all of the Baydouns, without identifying the singular involvement or activity of each of them, suggests that the Court ignore its obligation to sentence each defendant as an individual.

The first time Ali Baydoun became aware of his brother's efforts to bribe a public official was in the car of the Garden City police chief on December 2, 2016. While that does not impact the fact that he is guilty of the crime charged, it is significant for this Court's decision of what punishment is appropriate.

Until December 2, 2016, Mike Baydoun was the only person involved in this criminal activity. He was the one who came up with the idea, accepted the chief's request for a bribe, and discussed the amount and scope of the bribe(s). The only thing Ali Bay doing knew was that his brother was trying to get out of the restaurant business and into the marijuana business.  Ali had been paying monthly to keep the restaurant afloat, and anything his brother could do to earn a living

2

profitably would reduce his financial burden.

Mike Baydoun was a big talker who said whatever it took to get what he wanted. Every time the chief said he would need something, Mike Baydoun said, "no problem." The so-called "bribe escrow" was Mike Baydoun responding to the chief's suggestion that by bribing somebody in Lansing Mike could get a license to grow more marijuana than he was originally requesting. When the chief said "more", Mike said "great no problem." This Court's findings regarding the facts of this case should not be based on anything Mike Baydoun said.

Ali Baydoun had, for some time, been the financial support of his brother's financially struggling restaurant. Mr. Baydoun was aware, and even encouraged, his brother to consider closing the restaurant and finding some other business. When his brother advised him that was going into the  medical marijuana business, Mr. Baydoun knew that his brother would seek and need his financial assistance. On December 2, 2016 Mr. Baydoun went to the bank and withdrew $7,000 from two separate accounts ($4,000 from one and $3,000 from another) because his brother asked to borrow $15,000 and he only had half of that amount on hand.  Mr. Baydoun then went to his brother's restaurant to give the money to his brother.

While in the restaurant, Mr. Baydoun was contacted by his brother who asked him to come out to the back of the restaurant.  His brother said he wanted to

3

introduce him to someone.  When he and his nephew went behind the restaurant, they met the chief.  From the December 7, 2016 recording, we know the chief was as surprised as Mr. Baydoun was, because he had to clean out his car in order to make room for Mr. Baydoun and his nephew to sit in the backseat.  After introductions were made, the conversation then went to the process of obtaining a dispensary license in Garden City, the operation of that dispensary, and acquiring a location.  The conversation involved the chief, Mike Baydoun, and Jalal Baydoun. The only contribution Ali Baydoun made to the conversation was to state that the building whose purchase was being discussed would be put in his name, and when escrow funds were needed for the ***purchase of the building[1]***, they would be available.

Mr. Baydoun concedes that lawful business is not conducted in the back of a police car.  As soon as Mike and the chief began to talk about the marijuana business and the need for the  consent and participation of public officials, he knew, or should have known, that whatever his brother had in mind, it was not legal.  He knew, or should have known, that it was time to get out of the car.  If he didn't get it before then, when the chief asked Mike Baydoun  if he had something

---

[1] The government mischaracterizes this statement in its sentencing memorandum (Doc 43, p. 5). The government claims that the discussion of money that took place in the car was about a bribe. The conversation clearly was about the purchase of real estate and escrow funds that would be necessary for the purchase.

4

for the chief and Mike Baydoun said "let's do business", Ali had to know that by giving the chief, or even Mike, the envelope with $15,000.00, he was engaging in criminal conduct.

Ali Baydoun did not worry about leaving the bank withdrawal receipts in the envelope because he thought he was giving the money to his brother. That analysis is also supported by Mr. Ali Baydoun's contemporaneous statement that "there are a couple bank receipts in there, but they are nothing." That statement also belies the government's claim that the receipts were left in the envelope as evidence that there was money available as "escrow" for future bribes.

## II. SENTENCING GUIDELINE CALCULATION

The sentencing guidelines are properly calculated at 10 to 16 months.

## III. 18 USC §3353(A) FACTORS

While the parties and probation have agreed that the applicable guideline range in this case is 10 to 16 months, that is not the end of the sentencing discussion. "[T]he sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors.", *Nelson v. United States*, 555 U.S. 350, 351 (2009). "The guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Id* at 352.

The district judge 'must...make an individualized assessment based on the facts presented' and upon a thorough consideration of all of the § 3553(a) factors." *United States v. Bolds*, 511 F.3d 568, 580-81 (6th Cir. 2007).  District court judges are mandated to determine the appropriate sentence under § 3553(a) completely independently of the Guidelines, *Rita v. United States, 127 S. Ct. 2456 (2007)*. The Court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of *§ 3553(a)(2). Id.*   The Court's task is to "consider" the seven listed factors contained in *§ 3553(a)*, and then to employ those considerations in arriving at a sentence that is sufficient but not greater than necessary to accomplish the purposes of sentencing listed in *§ 3553(a)(2).*

### (A) The nature and circumstances of the offense and the history and characteristics of the defendant

Bribery of public officials is a serious matter.  Mr. Baydoun does not deny that fact.  But that fact alone does not warrant a sentence of incarceration.

Mr. Baydoun is a first-time, non-violent offender. He is the single father of 6 children, and their sole support.  He has been in the used medical product business for over 9 years.  He is a legitimate businessman with no criminal history. He has traveled throughout the United States, and done business with no prior claim of personal misconduct.  His involvement in this offense was showing up on

6

December 2, 2016 to loan his brother $15,000 to use in establishing a new business.  The government has stipulated that he played a minimal role in this offense.

Given the facts of this case, Mr. Baydoun's law-abiding history, and the impact the charges have had on Mr. Baydoun's life, it is unlikely that he needs further punishment to impress upon him respect for the law.  He has been under a great deal of stress because of these charges, and his already compromised health has suffered.  His guilty plea, and conviction, will render him ineligible to bid on a number of government contracts, perpetually reducing his income.  Additionally, he has agreed to forfeit Sixty Thousand ($60,000) Dollars to the government to settle its claim that his bank accounts were, in fact, the "future bribes escrow", and therefore part and parcel of the bribery conspiracy[2].

### (B)  THE NEED FOR THE SENTENCE TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

There is no reason to believe that there would be any general deterrence as a result of incarcerating Mr. Baydoun.  As will be discussed below, the sentencing commission has determined that individuals similarly situated to Mr. Baydoun have a very low risk of re offending.

---

[2] The government originally seized and sought to forfeit over $130,000. As a result of the government seizure of his account, Bank of America those accounts and will not do business with Mr. Baydoun in the future.

7

Additionally, academic literature on sentencing consistently has shown that it is the certainty of punishment, not the length, that is the deterrent factor in most sentences, *Five Things About Deterrence*, National Institute of Justice, June 6, 2016, https://nij.gov/five-things/pages/deterrence.aspx[3].  Empirical research has shown that while certainty has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).  See also, Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime,* 8 Cardozo J. Conflict Resol. 421, 447,-48 (2007).

**(C) THE NEED FOR THE SENTENCE TO  PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT**

The Sentencing Commission issued its study, "Measuring Recidivism.", in May, 2004,  http://www.ussc.gov/publicat/Recidivism_General.pdf  ("Measuring Recidivism").  This report offered a statistical analysis of the type of person most likely and least likely to re-offend.  The study demonstrated that the risk of Mr. Baydoun re-offending is virtually nil, and lends support to the defense position that a custodial sentence is not necessary to deter Mr. Baydoun or others similarly

---

[3] See, also, *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, Valerie Wright, Ph.D (2010); *Deterrence in the Twenty-First Century*, Daniel S. Nagin (2013);

situated.

The study demonstrated that 1) those over 50 are less likely to recidivate than those under 50; 2) those who have not used illicit drugs, are less likely to recidivate than those who did; 3) those who are or have been married are less likely to recidivate than those who have never been married; 4) non-violent offenders are less likely to recidivate than violent offenders; 5) first time offenders are less likely to recidivate than repeat offenders; 6) those who are employed are less likely to recidivate than those who aren't; and 7) those who are sentenced to non-jail sentences are less likely to recidivate than those who receive jail.

Both the age of an offender and his first offender status are powerful predictors of the likelihood of recidivism. Indeed, the Sentencing Commission has itself recognized that (1) recidivism rates decline dramatically with age, and (2) first-time offenders are even less likely to reoffend than defendants with a limited criminal history who also fall within Criminal History Category I. See, U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004); U.S. Sentencing Commission, "Recidivism and the 'First Offender'", at 13- 14 (May 2004).

The Sentencing Commission has recognized that an offender within Mr. Baydoun's age range – and his lack of any criminal record – is extremely unlikely

to recidivate.  A within-guidelines sentence of 10-16 months is simply greater than necessary to protect the public from the small chance of his committing future crimes. Such a lengthy sentence would only serve to provide"just deserts" at a very high cost to the American taxpayer while hindering Mr. Baydoun's ability to take care of his health and his family.

### (D) THE NEED FOR THE SENTENCE TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

There is nothing the Bureau of prisons can do to provide Mr. Baydoun with any of the needs described in this subparagraph.  He is a businessman who has supported his family for a number of years by the sweat of his own labor.

### (E) ANY PERTINENT POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION

**§5K2.20. Aberrant Behavior (Policy Statement)**
"A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior."

***

**Application Notes:**

1. For purposes of this policy statement—

'Aberrant behavior' means a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked

deviation by the defendant from an otherwise law-abiding life.

The facts demonstrate that this policy statement applies to Mr. Baydoun. First, it is clear that Mr. Baydoun's involvement occurred without significant planning. Mr. Baydoun's brother asked him to loan him money, and Mr. Baydoun did so. He went to the bank and withdrew money and took it to his brother. The government's attempt to misinterpret the facts notwithstanding, leaving the bank receipts in the envelope was clearly evidence that Mr. Baydoun intended to give the money to his brother, not the police chief.

The government stipulation to a minimal role reduction fits the requirement that Mr. Baydoun involvement be limited. The fact that Mr. Baydoun only was involved to the extent that he was going to loan his brother money reinforces that stipulation.

It is clear from Mr. Baydoun's personal history that his involvement here constitutes "a marked deviation by the defendant from an otherwise law-abiding life". Mr. Baydoun worked hard at physical labor for the railroad for a number of years before he was injured and had to leave his employment. Although he could have qualified for disability, Mr. Baydoun rejected that path and began a series of businesses, which have allowed him to provide for his family.

When his wife died, Mr. Baydoun immediately, and enthusiastically

accepted responsibility for his six daughters.  He has provided them an honest and honorable living. He pays for their schooling and all of their other care. He has not let subsequent medical problems slow him down. He has cared for everyone that needs his help. Indeed, it was that willingness, and practice, of supporting and caring for his brother that dragged him into this offense.

## III.  The kinds of sentences available

There is nothing to limit this Court's creativity in sentencing Mr. Baydoun. In the Sentencing Reform Act, Congress directed the Sentencing Commission to "insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j) (emphasis added).  While there is no question that this is a serious offense, given Mr. Baydouns limited involvement, this Court should not regard **his** conduct as an "otherwise serious offense."

## IV. CONCLUSION

There are multiple reasons that to suggest that Mr. Baydoun does not require incarceration.  Because it is the certainty, not the severity, of punishment that best serves as a general deterrent to the public at large, a sentence of probation would more than adequately fulfill § 3553(a)(2)(B)'s goal of "afford[ing] adequate

deterrence to criminal conduct."

                                       *s/ William W. Swor*

                                       WILLIAM W. SWOR (P21215)
Attorney for Defendant Ali Baydoun
1120 Ford Building
615 Griswold St.
Detroit, MI 48226
(313) 967-0200
wwswor@wwnet.net

Dated: April 4, 2018